**522**     MATTER OF WEATHERBEE.

Surrogate's ·Court, New York County, November, 1917. [Vol. 101.

# Matter of the Estate of EDWIN H. WEATHERBEE, Deceased.

(Surrogate's Court, New York County, November, 1917.)

Executors and administrators — judicial settlement of accounts of — trustees — wills — devise — life estates.
Accounting — by executors — life tenants — mortgages — estoppel.

> Where a testator devised to each of his three children a life estate in one of three farms together with the use and income of a certain sum of money " with which to maintain and care for said farm and its belongings," no trust being created in respect to the use of said money, the object of the testator seemingly to be to enable the life tenants to discharge their legal duty to the remaindermen by proper care of the properties devised, and said money bequests are not made conditional upon the use to which they should be applied, the life tenants are entitled to have the *corpus* of said money bequests paid over to them upon the judicial settlement of the account of the executors and trustees upon severally filing a bond.

> Where upon a prior accounting it appeared that the total of the three sums of money payable to the life tenants was invested by the executors in a purchase money mortgage and then held by them and included in that account, and no objection to said investment or to the failure of the executors to pay over was then taken by the legatees, they are estopped in the present accounting from questioning the propriety of such investment.

PROCEEDING upon the judicial settlement of the account of executors and trustees.

Curtis, Mallet-Prevost & Colt, for Mary A. Milbank, petitioner.

Crescens Hubbard, for Hicks A. Weatherbee, Amy H. Weatherbee and Henrietta C. McGusty.

Warren C. Fielding, special guardian.

Misc.]    Surrogate's Court, New York County, November, 1917.

FOWLER, S.  In this accounting proceeding the construction of the will has become necessary.  By his will the testator devises to each of his three children a life interest in one of three farms, together with the use and income of a sum of money " with which to maintain and care for said farm and its belongings." Except for the location of the farms and the amount of the money bequests the following provision for one of the children is substantially identical with the devises and bequests for the other two children in so far as their proper construction is concerned.

" *Third,* I give, devise and bequeath to my eldest daughter, Henrietta Constable Read, my farm known as Creekandall, situated at Chatham, Columbia County, New York, consisting of about 200 acres of land, being the property bought at sale on foreclosure of a mortgage held by me from Chilon Howard, together with all the furniture in the house thereon and the horses, carriages, harness and stable equipment, farming implements and other personal property upon or belonging to said farm, to have and to hold the same for and during her natural life, and together with the use and income for her lifetime of the sum of $30,000, with which to maintain and care for said farm and its belongings, and upon and after her death the same to her eldest child her surviving, if she shall leave issue in being at the time of my death, to have and to hold the same to him or her in like manner, also for and during his or her natural life, and upon his or her death, to his or her issue then surviving, absolutely and in fee, and in default of such issue to my daughter's other children or issue, if any, and in case my said daughter shall leave no child, or in the last event no other child or issue her surviving, then to my other two children equally.

" If my said daughter shall have no child in being

Surrogate's Court, New York County, November, 1917.   [Vol. 101.

at the time of my death, but shall subsequently have issue, then at and upon the death of my said daughter I give the said personal property to my other two children equally, and I devise the said farm and real estate to my said daughter's eldest child living at the time of her death absolutely and in fee, provided that he or she shall live to attain majority or shall sooner die leaving issue, and if he or she shall die during minority, leaving no issue, then to my said daughter's next heirs at law.

" Neither my daughter nor any other of said legatees shall, however, be held accountable for any of said personal property that shall perish in the using or be replaced by other articles of a like kind, though it is my wish and purpose by the money gift that such articles be restored or supplied as needed from time to time and that the buildings and fences and land be kept in good condition."

One of the daughters of the testator, Mary A. Milbank, formerly Mary A. Weatherbee, an executrix and trustee under the will, petitioned this court for an order requiring the executors to render and judicially settle their accounts, and also prays for a construction of the will in respect of the true meaning and intent of the bequest to her in the fourth paragraph of the will, " of the use and income for her lifetime of the sum of $10,000 with which to maintain and care for said farm and its belongings." The said petitioner claims to be entitled to the immediate payment of the money bequeathed.

Hicks A. Weatherbee, a son of testator, and executor and trustee under his will, and Henrietta C. McGusty, a daughter of the testator and legatee under his will, filed answers to the petition of said Mary A. Milbank, in which they severally allege that the particular farm bequeathed to each is constantly decreasing in value;

that the soil is not fertile and largely unproductive; that the chief value of each farm is in its woodland, and that the maintenance of the fences and buildings would not increase the value of said woodland. Henrietta C. McGusty shows that the income for several years from the $30,000 bequeathed to her will exceed the entire present market value of the farm in which she has a life estate and will add little or nothing to the value of the said farm, and " that no good, valuable or useful purpose will be served by expending the money on said farm; that it is her intention to apply to the courts for leave to sell the said farm at whatever price it will bring, and that the money derived from said sale, with the interest accruing thereon, will amount to more for the remaindermen than the value of the farm itself." Hicks A. Weatherbee alleges further that the " homestead " of which he has a life estate " is a dwelling house in the village of Chatham, New York; that it is over seventy-five years old; that it is located within a few feet of the tracks of the N. Y. C. & H. R. R. Co.; that there is a railroad roundhouse almost direcly opposite the said homestead, and that numbers of locomotive engines are constantly appearing at all hours of the day and night and the smoke and gases from said engines, with almost no interruption, blow upon and over the said homestead, making it undesirable for occupation; that certain premises adjoining the same are occupied by Italians; that the said conditions are likely to continue indefinitely; that all moneys spent upon said homestead will be expended to no valuable purpose and will create no additional value to the remaindermen, and that it is the intention of the said Hicks A. Weatherbee to apply to the court for leave to sell the said homestead." All three of said life tenants contend that they are entitled absolutely to the

Surrogate's Court, New York County, November, 1917. [Vol. 101.

income from the amounts respectively bequeathed to them, and are not legally bound to apply such income " to maintain and care for said farm and its belongings."

Hicks A. Weatherbee and Mary A. Milbank, as executor and executrix, also filed a petition for the judicial settlement of their account.

The special guardian for the infant children of Henrietta A. McGusty, who have contingent interests in the real estate and in the three sums of money, the use of which is bequeathed as aforesaid, contends that the income from the three funds must be used for no other purpose than for the maintenance of the various properties mentioned.

It seems clear that no trust is created in respect of the use of said sums of money. Testator's children *nominatim* take legal life interests. The object of the testator seems to be to enable the life tenants to discharge their legal duty to the remaindermen by proper care of the properties devised. The real question here is, Are the life tenants entitled to the possession of the *corpus* of the money bequests? The gift of the income to the three children was evidently testator's primary object, and the use to be made of said income secondary. The bequests are not made conditional upon the use to which they should be applied. It seems to me that the three legatees are entitled to have the three funds paid over to them. The extent of their obligation to apply the income to the purpose indicated ought to be reserved for a separate application to the Supreme Court. The rule established in *Johnston* v. *Hughes*, 187 N. Y. 446, may, however, be controlling. In that case the court said: " He (testator) merely indicated a purpose, thus making the gift his primary object and the use to be made of it his secondary purpose. Had he stated the use to be the supplying of

clothing to the inmates of the hospital and the sisters had found that it was unnecessary to use it for clothing, but that its use was necessary for the supplying of food, it would hardly be claimed that the use suggested operated to deprive the bequest of its absolute character and constituted the gift conditional; or even that the diversion of its use to another person worked a forfeiture.  Should a testator leave to his daughter a sum of money with which to purchase for her use a diamond necklace, the gift would be absolute and vest the money in her, and if she should thereafter choose to invest it in bonds instead of diamonds there would be no cause for complaint that the gift was invalid.'' This matter presents very interesting questions concerning gifts of personalty limited to follow the legal title to land. The scheme is very similar to an entail.  The wise old father evidently intended that life tenants should live on the farms devised to them severally, and that his money should be used on the farms by the life tenants. As there is to be a petition for sale addressed to the Supreme Court, that tribunal should pass on the will generally.

It appears also that the total of the three sums of money payable to the three life tenants was invested by the executors in a purchase money mortgage, which is now held by the executors.  The legatees are estopped from questioning the propriety of this investment, because of the prior accounting decree dated March 20, 1914.  In that accounting was included the $55,000 mortgage, and no objection to such investment, or to the failure of the executors to pay over, was then taken by the legatees.  The mortgage may be sold by the executors and the proceeds paid to the three legatees, or, if the parties prefer to avoid a sale, the decree may provide that the interest of each legatee therein be assigned and transferred to said legatees.  In either

Surrogate's Court, New York County, November, 1917. [Vol. 101.

event each legatee should file a bond, to be approved by the surrogate. *Matter of McDougall*, 141 N. Y. 21.

Decreed accordingly.